IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                *
BRANDON KERRIGAN,
                                *
      PLAINTIFF,
                                *
          V.                         CIVIL NO.: WDQ-14-3153
                                *
BOARD OF EDUCATION OF CARROLL
COUNTY,                         *

      DEFENDANT.                *
```

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Brandon Kerrigan sued the Board of Education of Carroll County (the "Board")[1] for violations of the Americans with Disabilities Act of 1990, as amended ("ADA")[2] and state law wrongful termination. ECF Nos. 1, 27-1.[3] Pending are Kerrigan's motion for leave to file a second amended complaint, ECF No. 27, and the Board's motion to dismiss the second amended complaint,

---

[1] Kerrigan also sued Carroll County. However, on February 16, 2015, after this Court ordered Kerrigan to show cause why Carroll County should not be dismissed for failure to serve process, Kerrigan dismissed Carroll County from this suit. ECF Nos. 19, 22.

[2] 42 U.S.C. §§ 12-101 *et seq.* (2012).

[3] Counts one to five allege several theories of recovery under the ADA: discriminatory termination, failure to engage in interactive process, failure or refusal to provide reasonable accommodation, retaliation, and "'regarded as' discrimination." ECF No. 27-1 at 6-11. Count six alleges wrongful termination in violation of public policy. *Id.* at 11-12.

or alternatively, for summary judgment.[4]  ECF No. 29.  No hearing

is necessary.  Local Rule 105.6 (D. Md. 2014).  For the

following reasons, Kerrigan's motion will be granted in part and

denied in part,[5] and the Board's motion will be denied.[6]

---

[4] The Board seeks dismissal--not summary judgment--in connection
with Kerrigan's ADA claims for failure to state a claim.  ECF
No. 29-1 at 12.  The Board seeks dismissal of the state law
wrongful termination claim on grounds of failure to state a
claim or lack of subject matter jurisdiction, or alternatively,
for summary judgment.  *Id.* at 20.  The crux of the Board's
argument is that Kerrigan's wrongful termination claim must fail
because he failed to exhaust administrative remedies.  *See id.*
at 12.  Because failure to exhaust administrative remedies is
governed by the standards stated in Fed. R. Civ. P. 12(b)(1) for
lack of subject matter jurisdiction, the Court will treat that
aspect of the Board's motion as one to dismiss for lack of
subject matter jurisdiction.  *See Khoury v. Meserve*, 268 F.
Supp. 2d 600, 606 (D. Md. 2003) *aff'd*, 85 F. App'x 960 (4th Cir.
2004).  For such motions, the Court may look "beyond the
pleadings" to the submitted evidence to determine if
jurisdiction exists.  *Id.*

[5] Under Fed. R. Civ. P. 15(a)(2), when--as here--more than 21
days have passed since the complaint has been served or a
responsive pleading filed, "a party may amend its pleading only
with the opposing party's written consent or the court's leave."
The Board has consented to the filing of the second amended
complaint.  ECF No. 27 at 3.  However, the second amended
complaint--filed about one week after Kerrigan dismissed Carroll
County--names Carroll County as a defendant.  *See* ECF No. 27-1
at 1, 3.  Carroll County has not consented to the filing of the
second amended complaint--nor did Kerrigan contact Carroll
County to obtain its consent.  *See* ECF No. 27 at 3 (noting that
Kerrigan contacted "opposing counsel," *i.e.*, the Board's
attorney).  Because Carroll County would be prejudiced by
granting leave to amend, particularly as the second amended
complaint merely adds Kerrigan's receipt of a notice of right to
sue, *see* ECF Nos. 27 at 1, 27-2, the Court will grant Kerrigan's
motion in part and deny it in part as to the addition of Carroll
County.  *See Matrix Capital Mgmt. Fund, LP v. BearingPoint,
Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (leave to amend may be
denied when the amendment would be prejudicial).  Additionally,

I.   Background[7]

From January 21 to June 23, 2014, Kerrigan worked for the
Board as a custodian at Eldersburg Elementary School and Liberty
High School (together, the "schools").  ECF No. 27-1 ¶¶ 3,6.[8]

---

Kerrigan's second amended complaint names "Carroll County Board
of Education" as the defendant; the Clerk will be directed to
amend the docket to reflect the Board's proper name.

[6] In light of Kerrigan's motion for leave to file a second
amended complaint, the Court will deny as moot Kerrigan's motion
for leave to file a first amended complaint, ECF No. 16, and the
Board's motion to dismiss the original complaint, ECF No. 10.
*See Blount v. Carlson Hotels*, 3:11CV452-M0C-DSC, 2011 WL
6098697, at *1 (W.D.N.C. Dec.6, 2011) ("It is well settled that
an amended pleading supersedes the original pleading, and that
motions directed at superseded pleadings are to be denied as
moot.")(*citing Young v. City of Mount Ranier*, 238 F.3d 567, 573
(4th Cir. 2001) ("The general rule ... is that an amended
pleading supersedes the original pleading, rendering the
original pleading of no effect.")).

[7] The facts are from the second amended complaint, ECF No. 27-1.
For the motion to dismiss for failure to state a claim, the
well-pled allegations in the complaint are accepted as true.
*See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).
In reviewing the motion to dismiss, the Court may consider
allegations in the complaint, matters of public record, and
documents attached to the motion to dismiss that are integral to
the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Matters of public
record include state court records and filings.  *See Witthohn v.
Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006).
Additional facts relevant to subject matter jurisdiction over
the wrongful discharge claim are from a collective bargaining
agreement appended to the Board's motion, ECF No. 29-3.  For
such motions, the Court may look "beyond the pleadings" to the
submitted evidence to determine if jurisdiction exists.  *Khoury*,
268 F. Supp. 2d at 606.

[8] A collective bargaining agreement ("CBA") between the Board and
"regular" employees provided that "[t]he employee *may* appeal an
issue related to discipline and discharge pursuant to the

Kerrigan "performed his duties at least satisfactorily," and never received disciplinary action or counseling for "poor performance or misconduct."   *Id.* ¶ 6.

On April 9, 2014, Kerrigan "severely injured his foot on the job."   *Id.* ¶ 7.   Kerrigan completed his shift "and continued working for the next three weeks despite the pain and considerable swelling of his foot."   *Id.*

On May 1, 2014, Kerrigan filed a claim for recovery of medical expenses and lost wages with the Maryland Worker's Compensation Commission.   *Id.* ¶ 8.   On May 2, 2014, Kerrigan sought medical treatment for his foot injury; his physician recommended that he remain off work until May 7.   *Id.* ¶ 9. Kerrigan faxed the physician's note to the schools.   On May 7, 2014, Kerrigan "returned to work, but continued to experience considerable pain and discomfort."   *Id.* ¶ 10.   The Board denied his request for light duty work.   *Id.*

On May 9, 2014, Kerrigan, "at the Board's request, signed a document stating that he had satisfactorily completed his 90-day probationary period."   *Id.* ¶ 11.

On May 20, 2014, Kerrigan visited his primary care physician because his foot had not improved.   *Id.* ¶ 12.   The physician "noted foot pain and swelling, and recommended that

administrative appeals process established in the Annotated Code of Maryland."   ECF No. 29-3 at 3,27 (emphasis added).

[Kerrigan] remain off work until May 27." *Id.* On May 27, Kerrigan's physician referred him to an orthopedic specialist. *Id.* ¶ 13. Because Kerrigan had been unable to resume regular work duties, his physician recommended that he remain off work until June 2 pending the results of the orthopedic consultation. *Id.*

On May 30, 2014, Kerrigan visited an orthopedic specialist--"Dr. Blue"--who recommended that he remain off work until June 6, when MRI results would be available. *Id.* ¶ 14. Kerrigan informed the schools about his absence. *Id.* On June 9, 2014, Dr. Blue wrote a note stating that Kerrigan had been unable to work from June 6 to June 9; Kerrigan faxed the note to the schools. *Id.* ¶ 15. In a separate note dated June 9, 2014, in light of the MRI results, another orthopedist--"Dr. Kluge"--recommended that Kerrigan remain off work for three weeks. *Id.* ¶ 16. Kerrigan informed the schools. *Id.*[9]

As of June 9, 2014, Kerrigan had been "medically cleared to return to work as a custodial employee on June 30 without restriction." *Id.* ¶ 17. However, on June 12, 2014, the Board

---

[9] Kerrigan alleges that he had been "substantially limited [in] the major life activities of mobility, walking, and performing manual tasks." ECF No. 27-1 ¶ 29.

told Kerrigan that, because of his absences, his probationary
period had been extended to mid-August, 2014. *Id.* ¶ 18.[10]

On June 23, 2014, the Board contacted Kerrigan and asked
him to meet with Human Resources ("HR") that morning. *Id.* ¶ 19.
That day, HR gave Kerrigan a letter informing him that "during
his (extended) probationary period, he had failed 'to
demonstrate the ability to be a dependable asset'"; thus, his
"'probationary employment as custodian' was terminated." *Id.* ¶
20.[11]

On July 8, 2014, Kerrigan filed a charge with the Equal
Employment Opportunity Commission ("EEOC") alleging that he had
been fired because of his disability. *Id.* ¶ 23. That same day,
Kerrigan allegedly received his EEOC notice of right to sue.
*Id.* ¶ 24.[12]

---

[10] Kerrigan alleges that the extension of probation was in
retaliation for his request for short-term leave. *Id.* ¶¶ 48-49.

[11] Kerrigan alleges that "[t]he Board regarded [him] as 'damaged
goods,' and fired him in the mistaken belief that his injured
foot had not fully healed, and would not fully heal, despite his
doctor's contrary opinion." *Id.* ¶ 55. Kerrigan further alleges
that the Board fired him because he had "filed a claim for
worker's compensation." *Id.* ¶ 61.

[12] The record shows that the Board did not receive notice of the
charge until August 2014. ECF No. 10-4. Because Kerrigan did
not attach the notice of right to sue to his original complaint,
the Court is unable to verify the date on which it was sent or
received; that information is not necessary for the pending
motion.

On October 7, 2014, Kerrigan sued the Board alleging ADA violations and common law wrongful termination.  ECF No. 1.[13]  On November 12, 2014, the Board moved to dismiss counts four and six of the complaint, or for summary judgment.  ECF No. 10.[14]

On December 18, 2014, Kerrigan filed a new EEOC charge alleging that he was fired because of a disability, and because he had requested a reasonable accommodation.  ECF No. 27-1 ¶ 25.

On January 12, 2015, Kerrigan moved to amend the complaint and for an order denying as moot the Board's motion to dismiss count four.  ECF No. 16.[15]  On January 26, 2015, Kerrigan asked the EEOC to issue a notice of right to sue.  *Id.* ¶ 26.  On February 6, 2015, Kerrigan received a notice of right to sue. *Id.*; ECF No. 27-3.

---

[13] This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  This Court has jurisdiction over the non-federal claim under 28 U.S.C. § 1367, which provides, *inter alia*, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

[14] On November 26, 2014, Kerrigan opposed the motion.  ECF No. 11.  On December 9, 2014, the Board replied.  ECF No. 14.

[15] On January 30, 2015, the Board opposed the motion.  ECF No. 18.  On February 11, 2015, Kerrigan replied.  ECF No. 20.

On February 24, 2015, Kerrigan moved for leave to file a second amended complaint. ECF No. 27. On March 13, 2015, the Board moved to dismiss the second amended complaint, or alternatively, for summary judgment. ECF No. 29. On April 6, 2015, Kerrigan opposed the motion. ECF No. 32. On April 23, 2015, the Board replied. ECF No. 33.

II. Analysis

A. Legal Standard

1. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury*, 268 F.Supp.2d at 606. The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id.*

B.   ADA Claims

The ADA makes it unlawful for employers to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a).[16]   The Board contends that Kerrigan's ADA claims must fail because he is not "disabled" under the ADA. ECF No. 29-1 at 5.   Kerrigan contends that he has pled sufficient facts about his disability.   ECF No. 32 at 6.   A disability is either "a physical or mental impairment that substantially limits one or more major life activities" (the "actual disability" prong), "a record of such an impairment" (the "record" prong), or "being regarded as having such an impairment" (the "regarded as" prong).   42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1)(iii).

In *Toyota Motor Manufacturing, Kentucky Inc. v. Williams*, 534 U.S. 184, 199, 122 S. Ct. 681, 151 L.Ed.2d 615 (2002), the Supreme Court adopted a strict construction of disability.   The Court also stated that a temporary impairment did not qualify as a disability under the ADA.   *Id.*   In September 2008, Congress

---

[16] To survive a motion to dismiss in an employment discrimination suit, plaintiffs need not allege facts establishing a *prima facie* case under the burden-shifting framework stated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).   *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).   However, plaintiffs must plead sufficient facts "to satisfy the elements of a cause of action created by [the applicable] statute."   *McCleary-Evans*, 780 F.3d at 585.

amended the ADA to overturn the Supreme Court's ruling in
*Toyota*.  *See Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 329
(4th Cir. 2014).  Congress sought to "reinstat[e] a broad scope
of protection . . . available under the ADA."  ADA Amendments
Act ("ADAAA") of 2008, Pub. L. No. 110-325, 122 Stat. 3553.
"[T]he [ADAAA] provides that the definition of disability 'shall
be construed in favor of broad coverage of individuals under
this chapter, to the maximum extent permitted . . . .'"
*Summers,* 740 F.3d at 329 (*quoting* 42 U.S.C. § 12102(4)(A)).
"In enacting the ADAAA, Congress abrogated earlier inconsistent
caselaw."  *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d
562, 572 (4th Cir. 2015).  Following passage of the ADAAA, the
EEOC revised its regulations to reflect the amendments.  EEOC
regulations state that "[t]he primary object of attention in
cases brought under the ADA should be whether covered entities
have complied with their obligations and whether discrimination
has occurred, not whether the individual meets the definition of
disability."  *Id.* (*quoting* 29 C.F.R. § 1630.1(c)(4)).

      1.   "Actual" Disability

The Board argues that Kerrigan has insufficiently alleged
the "nature and severity" of his foot injury or how it has
substantially limited a major life activity.  ECF No. 29-1 at
10-11.  Kerrigan contends that the "excruciating detail"
demanded by the Board is not required at the pleading stage, and

the nature and severity of his injuries are factual issues not
properly resolved in a motion to dismiss.  ECF No. 32 at 7.

"The term 'substantially limits' shall be construed broadly
in favor of expansive coverage" and is "not meant to be a
demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).  "An
impairment is a disability within the meaning of this section if
it substantially limits the ability of an individual to perform
a major life activity as compared to most people in the general
population."  *Id.* § 1630.2(j)(1)(ii).  However, the impairment
"need not prevent, or significantly or severely restrict, the
individual from performing a major life activity" to be
"substantially limiting."  *Id.*  The "effects of an impairment
lasting or expected to last fewer than six months *can be
substantially limiting . . . .*"  *Id.* § 1630.2(j)(1)(ix). Instead
of classifying all short term impairments as not disabilities,
courts should look at duration as simply "one factor that is
relevant in determining whether the impairment substantially
limits a major life activity."  *Id.* § 1630.2(j)(1)(ix) (app.).
"Impairments that last only for a short period of time are
typically not covered, although they may be covered if
sufficiently severe."  *Id.*

Here, Kerrigan alleges that he "severely injured his foot,"
"experience[d] considerable pain and discomfort," and had "foot
pain and swelling."  ECF No. 27-1 ¶¶ 7, 10, 12.  Kerrigan

further alleges that he had been "substantially limited [in] the
major life activities of mobility, walking, and performing
manual tasks," and had been unable to work for about six weeks.
*Id.* ¶¶ 9, 12-17.   Although Kerrigan does not allege that he had
been substantially limited in the major life activity of
working, it is reasonable to infer that his custodial duties
required a certain degree of mobility, walking, and performance
of manual tasks.[17]   Considering the broad scope of the ADA, the
second amended complaint--though lacking in factual detail--
states a disability under the ADA.   *See Mary's House, Inc. v. N.
Carolina*, 976 F. Supp. 2d 691, 702 (M.D.N.C. 2013)("Although the
facts alleged may be 'meager,' a complaint survives a motion to
dismiss as long as it specifically refers to the underlying
facts of the disability or perceived disability.").[18]   Although

_____

[17] Kerrigan asserts--in his response to the Board's motion--that
he had been substantially limited in the major life activity of
working.   *See* ECF No. 32 at 10 n.10.   However, "[i]t is
axiomatic . . . that the complaint may not be amended by the
briefs in opposition to a motion to dismiss."   *Redding v.
Ameriprise Auto & Home Ins.*, CIV.A. DKC 11-3141, 2012 WL
1268327, at *4 n. 6 (D. Md. Apr.13, 2012) (*quoting Car Carriers,
Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)
(internal quotations omitted)); *see, e.g., Presley*, 464 F.3d at
483 ("The purpose of Rule 12(b)(6) is to test the sufficiency of
a complaint [.]") (emphasis added) (internal quotations and
punctuation omitted).

[18] *See also Johnson v. Balt. Cty. Police Dep't*, No. ELH-12-2519,
2014 WL 1281602 at *15 (D. Md. Mar. 27, 2014) (woman who
suffered from back problems, had a hysterectomy, and had alleged
substantial limitations in lifting and reaching stated a
disability under the ADA); *Herbig v. Martin*, No. PWG-12-3398,

the facts may ultimately show that Kerrigan's temporary impairment was not substantially limiting, Kerrigan has plausibly alleged disability. *See Acosta v. Ingerman & Horwitz, L.L.C.*, No. CIV. WDQ-14-1605, 2015 WL 795108, at *4 (D. Md. Feb. 24, 2015); 29 C.F.R. § 1630.2(j)(1)(ix) (app.) (whether a short-term disability is sufficiently severe is a factual determination).

    2.   "Regarded As" Disability

The Board argues that Kerrigan cannot qualify under the "regarded as" prong because his injury lasted three months. ECF No. 29-1 at 12 n.3.[19] Kerrigan contends that exemption from the

---

2013 WL 3146937, at *7 (D. Md. June 18, 2013)(allegations that plaintiff suffered from depression and anxiety and had been ordered by her physician to reduce her work hours by two hours each day stated a disability under the ADA). *Cf. Gray v. Walmart Stores, Inc.*, No. 7:10-CV-171-BR, 2011 WL 1831780, at *9-*10 & n.10 (E.D.N.C. May 12, 2011)(allegations that plaintiff needed dental care, and assertions (in response to a motion to dismiss) that plaintiff had hypertension, a back injury "that had ... been in remission for the past seven years," a history of bowel problems, and recurring shoulder injury, were insufficient to state a disability when court had been unable to infer whether the impairments substantially limited a major life activity, and she had been able to work).

[19] The Board further contends that Kerrigan's "'regarded as' discrimination" claim is not a stand-alone cause of action, but rather, is another way of proving "disability" under the ADA. ECF No. 29-1 at 5. Kerrigan contends that the Board's argument "defies comprehension." ECF No. 32 at 11. Plaintiffs may establish liability under one or more of the three prongs of the disability definition. 29 C.F.R. § 1630.2(g)(2). Although not directly addressing the issue raised by the Board, the Court has located cases treating allegations under the "actual disability" and "regarded as" prongs as different ways of proving a single

"regarded as" requires that his condition be transitory *and* minor, and whether his condition is minor cannot be resolved on the pleadings.  ECF No. 32 at 12.

A person is regarded as disabled if a prohibited action is taken because of an actual or perceived impairment, "whether or not the impairment limits or is perceived to limit a major life activity."   42 U.S.C. § 12102(3).  The "regarded as" prong "means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.'" 29 C.F.R. § 1630.2(g)(1)(iii); *see also* 29 C.F.R. § 1630.15(f) ("It may be a defense to a charge of discrimination by an individual claiming coverage under the 'regarded as' prong of the definition of disability that the impairment is . . . or would be . . . 'transitory and minor.'").  Whether impairment is

---

disability discrimination claim, and as two separate claims. *Compare, e.g., Smaw v. Com. of Va. Dep't of State Police*, 862 F. Supp. 1469, 1475 (E.D. Va. 1994)(to prevail on ADA claim, plaintiff must show *either* that her disability "substantially limits her ability to hold any job," or that her employer regarded her as disabled), *with, e.g., Reardon v. Int'l Paper Co.*, No. 2:13-CV-02708-CWH, 2014 WL 2612496, at *7 (D.S.C. June 9, 2014) (noting that plaintiff asserted two claims: (1) an "actual disability" claim based on failure to provide a reasonable accommodation, and (2) a "regarded as" claim based on disability discrimination).  Here, Kerrigan alleges that the Board fired him because of his (actual) disability (count one), and because it regarded him as disabled (count five).   ECF No. 1 at 6, 10.  For now, the Court will treat the allegations as separate claims.  Whether Kerrigan may recover under both counts is a matter to be addressed later in the proceedings.

"transitory or minor" is determined objectively.  *See* 29 C.F.R.
§ 1630.15(f).  "Transitory" means "lasting or expected to last
six months or less."  *Id.*  "To the extent that this defense is
apparent from the face of the Complaint, it is an appropriate
basis for dismissing the claim"; however, whether a condition is
"minor" is typically addressed at summary judgment.  *Mayorga v.
Alorica, Inc.*, No. 12-21578-CIV, 2012 WL 3043021, at *8 & n. 2
(S.D. Fla. July 25, 2012).

Here, Kerrigan alleges that his injury lasted about three
months; thus, it was transitory.  *See* ECF No. 27-1 ¶¶ 7, 17
(alleging that he injured his foot on April 9, 2014, but would
be able to work without restriction on June 30, 2014).  Whether
Kerrigan's foot injury was minor, however, is a factual
determination that cannot be resolved on a motion to dismiss.
*See Mayorga*, 2012 WL 3043021, at *9 & n.2 (noting that the ADA
does not define "minor," and whether plaintiff's pregnancy-
related symptoms were minor is a question of fact).  Kerrigan
alleges that the Board fired him because "he had failed 'to
demonstrate the ability to be a dependable asset.'"  ECF No. 27-
1 ¶ 20.  It is reasonable to infer that the Board fired him
because of absences arising from his injury; thus, Kerrigan has
alleged that the Board fired him because it regarded him as
impaired.  Accordingly, Kerrigan has stated a disability under
the "regarded as" prong.

3.    Retaliation

Though arguing generally for dismissal of all ADA claims for failure to state a disability, the Board, in a footnote, argues that its extension of Kerrigan's probation could not have been retaliatory because it had been required to do so under the CBA.  ECF No. 29-1 at 3 n.3.  Kerrigan contends that stating a retaliation claim does not require the plaintiff to be disabled.[20]  ECF No. 32 at 10.  Apparently overlooking the Board's footnote, Kerrigan asserts that the Board did not seek dismissal of count four on any basis other than failure to adequately allege disability.  ECF No. 32 at 11 n.11.  However, in responding to the Board's arguments about his wrongful termination claim, Kerrigan asserted that he had not been covered by the CBA because he was a probationary employee.  ECF No. 11 at 10 n.5; *see also* ECF No. 32 at 2 n. 2 (incorporating by reference arguments made in response to the Board's prior motion for partial dismissal).

Under 42 U.S.C. § 12203(b), "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual

---

[20] Though Kerrigan titled count four as "retaliation," he brings his claim under 42 U.S.C. § 12203(b), which governs interference, coercion, or intimidation, not retaliation, which is governed by 42 U.S.C. § 12203(a).  *See* ECF No. 27-1 ¶ 51. However, the elements are the same.  *See Bertolotti v. Prunty*, No. CIV. A. 309-0952, 2010 WL 3743866, at *3 (S.D.W. Va. Sept. 21, 2010) (applying Fourth Circuit elements of retaliation claim to interference claim).

in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, . . . any right granted or protected by this chapter." In *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001), in the context of a retaliation claim under 42 U.S.C § 1223(a), the Fourth Circuit stated that "[t]his basis of recovery does not require that the claimant be disabled" because the statute protects "any individual" opposing unlawful conduct. *See id.*(emphasis omitted). The same reasoning applies here. *See* 42 U.S.C. § 12203(b)(barring interference with "any individual" exercising a protected right). However, as discussed above, *see supra* section II.B.2, Kerrigan has adequately alleged disability. Additionally, on the current, undeveloped record, it is inappropriate to resolve factual disputes about whether the Board had been required to extend Kerrigan's probation under the CBA, and whether Kerrigan was subject to that agreement. *See Presley*, 64 F.3d at 483 (on a motion to dismiss, court should not "resolve contests surrounding the facts"). The Board is not entitled to dismissal of the retaliation claim.

C.   Wrongful Termination Claim

The Board contends that Kerrigan failed to exhaust administrative remedies required by the CBA, which provides for appeals of discharge "pursuant to the administrative appeals process established in the Annotated Code of Maryland." ECF

18

Nos. 29-1 at 12-20; 29-3 at 27.[21]   Kerrigan contends that he was not covered by the CBA and was not required to exhaust administrative remedies.   ECF No. 11 at 6-10.

Kerrigan's wrongful discharge claim alleges a violation of Md. Code Ann., Lab. & Empl. § 9-1105 (West 2014).   It provides that "[a]n employer may not discharge a covered employee from employment solely because the covered employee files a claim for [worker's] compensation under this title."   Lab. & Empl. § 9-1105(a).

"[A]ctions for [wrongful or] abusive discharge are 'inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by [its own] civil remedy.'"   *Muench v. Alliant Foodservice, Inc.*, 205 F.Supp.2d 498, 504 (D. Md. 2002) (*quoting Makovi v. Sherwin—Williams Co.*, 316 Md. 603, 561 A.2d 179, 180 (Md. 1989)).   "'Discharging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy.'"   *Id.* (*quoting Ewing v. Koppers Company, Inc.*, 312 Md. 45, 537 A.2d 1173, 1175

---

[21] According to the Board, the CBA requires Kerrigan to pursue administrative remedies under Md. Ann. Code, Educ. § 4-205(c) (West 2014).   That statute provides: "A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board."   Educ. § 4-205(c)(3).

(Md. 1988)).  Accordingly, a tort claim "may lie" for the wrongful discharge of an employee in violation of Lab. & Empl. § 9-1105.  *See Insignia Residential Corp. v. Ashton*, 359 Md. 560, 755 A.2d 1080, 1080-81 (Md. 2000).  To prevail, "'an employee must allege that he or she was discharged solely and directly because of [filing a workers' compensation claim] or that his or her termination violated a recognized rule of law.'"  *Munoz v. Baltimore Cnty., Md.*, No. CIV.A. RDB-11-02693, 2012 WL 3038602, at *13 (D. Md. July 25, 2012) (*quoting Muench*, 205 F. Supp. 2d at 505); *see also Kern v. South Baltimore General Hospital*, 66 Md. App. 441, 452, 504 A.2d 1154 (1986) (wrongful discharge claim must fail when plaintiff admits that absenteeism contributed to her discharge).[22]

As noted above, on the current record, it is unclear whether--as the Board contends--the CBA applied to probationary employees.  Assuming, *arguendo*, that Kerrigan had been covered by the CBA, Maryland law recognizes the legality of a negotiated provision for administrative review of discipline and discharge. *See Howard Cnty. Educ. Ass'n-ESP, Inc. v. Bd. of Educ. of Howard*

---

[22] *But see Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 649-50 (D. Md. 1998)(defendants not entitled to judgment as a matter of law when jury found that plaintiff had been fired for filing a worker's compensation claim *and* in retaliation for opposing sexual harassment; interpreting *Kern* as holding that "an employer who has mixed motives for discharging an employee may avoid liability provided one motive is legitimate," but not when both motives are unlawful).

*Cnty.*, 220 Md. App. 282, 306, 103 A.3d 1060, 1075 (2014) *cert. granted sub nom. Bd. of Educ. of Howard Co. v. Howard Co. Educ. Ass'n-ESP*, 442 Md. 194, 112 A.3d 373 (2015).  Exhaustion of the administrative remedies under the CBA is required when a plaintiff alleges unlawful discharge *in breach of the collective bargaining agreement. See Gazunis v. Foster*, 400 Md. 541, 564, 929 A.2d 531, 545 (2007)(plaintiff alleged that the employer breached the collective bargaining agreement when it demoted and terminated her; thus, she was required to pursue the remedies stated in that agreement).

However, "the exhaustion of remedies under a collective bargaining agreement is not required when the issues raised by the plaintiff's wrongful discharge claim are not dependent upon an interpretation of the collective bargaining agreement." *Id.* at 563-564, 929 A.2d at 544; *Finch v. Holladay-Tyler Printing, Inc.*, 322 Md. 197, 206, 586 A.2d 1275, 1280 (1991)("[A] claim for abusive discharge begins with the assumption that it is irrelevant whether the right to discharge exists under [an] employment contract.  The issue is whether the employer abused that right.").  In *Finch*, the plaintiff sued his employer for wrongful discharge in retaliation for filing a worker's compensation claim without first resorting to grievance procedures stated in a collective bargaining agreement. *Finch*, 322 Md. at 199, 929 A.2d at 1276.  The Maryland Court of Appeals

held that he need not have, explaining that interpretation of
the CBA was irrelevant to the plaintiff's claim because he could
recover for wrongful discharge even if procedures outlined in
the collective bargaining agreement had been properly followed.
*Id.* at 207, 586 A.2d at 1280; *see also Martin Marietta Corp. v.
Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1402 (4th Cir.
1994)("the [Maryland] state law tort of retaliatory discharge
creates rights independent of those provided under [collective
bargaining agreements]"; thus plaintiff was not required to
engage in dispute resolution under the terms of the collective
bargaining agreement); *Smolarek v. Chrysler Corp.*, 879 F.2d
1326, 1331 (6th Cir. 1989)(claim for retaliatory discharge
following request for worker's compensation benefits can "can be
resolved without interpreting the [collective bargaining]
agreement . . . .")(quoting *Lingle v. Norge Div. of Magic Chef,
Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L.Ed.2d 410 (1988)).[23]

---

[23] The Board principally relies on *Venter v. Bd. of Educ.*, 185
Md. App. 648, 972 A.2d 328 (2009) to support its argument that
Kerrigan had to first pursue administrative review under Educ. §
4-205. *See* ECF No. 29-1 at 15. However, *Venter* addressed
whether the plaintiff's appeal of his termination was governed
by Educ. § 6-202 or Educ. § 4-205, which turned upon the proper
classification of the plaintiff's position. *Venter*, 185 Md.
App. at 665, 972 A.2d at 338. The Maryland Court of Special
Appeals held that the plaintiff, a former chief business officer
who had been fired for "demonstrat[ing] poor judgment," had to
appeal his termination under Educ. § 4-205 because he was not a
"professional assistant" within the meaning of Educ. § 6-201(e).
*Id.* at 676, 972 A.2d at 344. *Venter* did not address the issue
presented here: whether a plaintiff alleging wrongful

Similarly, here, proper adherence to CBA procedures would not preclude Kerrigan from asserting a wrongful discharge claim. Accordingly, Kerrigan was not required to pursue administrative remedies; thus, the Board is not entitled to dismissal of that claim.[24]

---

termination in retaliation for filing a worker's compensation claim must exhaust administrative remedies contemplated in a collective bargaining agreement.

[24] The Board contends that it is entitled to sovereign immunity and, thus, that Kerrigan is barred from recovering more than $100,000 in compensatory damages. ECF No. 29-1 at 22. It is well settled that "[a] county board of education is a state agency." *Davis v. Bd. of Educ. for Prince George's Cnty.*, 222 Md. App. 246, 270, 112 A.3d 1034, 1047-48 (2015). Absent a waiver, the Board would be immune from liability. *See id.* However, the Maryland legislature has enacted a limited waiver of its sovereign immunity. Under Md. Code Ann., Cts. & Jud. Proc. § 5-518(b) (West 2014), the Board "may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy *or*, if self-insured or a member of a pool described under § 4-105(c)(1)(ii) of the Education Article, above $100,000" (emphasis added). Cts. & Jud. Proc. § 5-518(c) waives the defense of sovereign immunity for claims of less than $100,000. The Maryland Court of Special Appeals has interpreted the first prong of Cts. & Jud. Proc. § 5-518(b) to mean that "for a claim in which more than $100,000 is sought, a county board may raise the defense of sovereign immunity for any amount above the limits of its insurance policy (*i.e.*, when the limits exceed $100,000)." *Davis*, 222 Md. App at 270, 112 A.3d at 1047-48.

Here, Kerrigan has not specified the amount of damages he seeks on his wrongful termination claim. *See* ECF No. 27-1 at 12. More importantly, the Board has not provided any evidence demonstrating whether it is privately insured, self-insured, or part of a pool. Thus, on the current record, the Court is unable to determine whether compensatory damages should be capped at $100,000. *See Davis*, 222 Md. App at 275, 112 A.3d at 1050 ("If the evidence shows that the Board was privately insured with limits above $100,000, then the verdict should be

III. Conclusion

For the reasons stated above, Kerrigan's motion will be granted in part and denied in part, and the Board's motion will be denied.


_____7/28/15_____

Date

_____

William D. Quarles, Jr.
United States District Judge

---

reduced to the amount of the policy limit. If the evidence shows that the Board was self-insured or part of a pool, the verdict should be reduced to $100,000.").  Because sovereign immunity may be raised at any time, *id.*, the Court will defer resolving this issue until it receives evidence of the amount of the Board's insurance coverage.