IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRANDON KERRIGAN,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-14-3153 |
| **BOARD OF EDUCATION OF CARROLL COUNTY,** | * | |
| | * | |
| Defendant | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM AND ORDER

Brandon Kerrigan ("Plaintiff") filed an action against the Board of Education of Carroll County ("Defendant"), charging Defendant with disability discrimination/retaliation and wrongful termination in violation of Maryland public policy.[1]  Now pending before the Court is Plaintiff's Motion for Leave to File Third Amended Complaint.  (ECF No. 44.)[2] The issues have been briefed (ECF Nos. 44–3, 45 & 46), and no hearing is required, *see* Local Rule 105.6 (D. Md. 2014).  For the reasons explained below, Plaintiff's Motion to Amend will be GRANTED.

### I.   *Background and Procedural History*[3]

Plaintiff was employed by Defendant from January 21, 2014, through June 23, 2014, as a custodian at Eldersburg Elementary School and Liberty High School.  (ECF No. 44–1 ¶ 6.)  On April 9, 2014, Plaintiff suffered a foot injury during his shift.  (*Id.* ¶ 7.)  He continued working for the following three weeks despite pain and swelling—but on May 1, he a filed a claim for

---

[1] Plaintiff initially named Carroll County as a codefendant in this action.  The parties subsequently stipulated to the dismissal of the county, and it was dismissed from the suit on February 18, 2015.  (ECF No. 23.)
[2] For convenience, the Court will refer to ECF No. 44 throughout this Memorandum as Plaintiff's "Motion to Amend."
[3] The facts are recited here as alleged in the proposed Third Amended Complaint (ECF No. 44–1), which adds a new legal theory, discussed *infra*, but which does not add factual content to the controlling Corrected Second Amended Complaint (ECF No. 39).

medical expenses and wage replacement with the Maryland Workers' Compensation Commission. (*Id.* ¶ 8.) Beginning on May 2, Plaintiff attended a series of medical appointments with his primary physician and two orthopedic specialists. Pursuant to the doctors' instructions, Plaintiff was absent for several days of work in early May; he took a lengthier absence beginning on May 20. (*Id.* ¶¶ 9-17.)[4] However, as of June 9, Plaintiff was cleared to return to work on June 30 without restriction. (*Id.* ¶ 17.)

On May 9, Plaintiff, at Defendant's request, signed a document stating that he had satisfactorily completed his ninety-day probation period. (*Id.* ¶ 11.) Nevertheless, on June 12, Defendant advised Plaintiff that—due to his disability-related absences—his probationary period would be extended to mid-August. (*Id.* ¶ 18.) Then, on June 23, Defendant's human-resource ("HR") agents advised Plaintiff that he had "failed 'to demonstrate the ability to be a dependable asset' and that, accordingly, his 'probationary employment as custodian was terminated.'" (*Id.* ¶ 20.)[5]

Following his termination, Plaintiff applied for and secured unemployment benefits; he claims that Maryland's Department of Labor, Licensing and Regulation found Defendant discharged him because of "absenteeism due to illness" and that Plaintiff's absences were "compelling and necessitous." (*Id.* ¶ 22.) Plaintiff subsequently filed two charges with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 23, 25.)[6] Plaintiff received EEOC right-to-sue letters in relation to each charge. (*Id.* ¶¶ 24, 26.)

---

[4] At some point in mid-May, Plaintiff allegedly requested "light duty consistent with his injury," but Defendant denied his request. (ECF No. 44–1 ¶ 10.)
[5] Plaintiff avers that, upon notice of his termination, he "informed HR of his conviction that the termination was discriminatory" but that "HR remained silent." (*Id.* ¶ 21.)
[6] In the first EEOC charge, Plaintiff alleged that he was fired because of a disability. In the second charge, he elaborated that he was fired because of a disability and because of his request for a reasonable accommodation of that disability. (*Id.* ¶¶ 23, 25.)

Plaintiff filed the present action on October 7, 2014, claiming that his termination constituted unlawful discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.*, and claiming further that his termination violated Maryland public policy—specifically, a provision of the Maryland Workers' Compensation Act that forbids employers from discharging covered employees solely because such employees have filed claims for compensation, *see* Md. Code Ann., Lab. & Empl. § 9-1105(a). Plaintiff thereafter moved to amend for the narrow purpose of adding detail about his second EEOC charge; Defendant moved to dismiss. (ECF Nos. 27 & 29.) In a July 28, 2015, Memorandum and accompanying Order, Judge William D. Quarles, Jr., denied Defendant's motion and granted Plaintiff's motion in substantial part. (ECF Nos. 35 & 36.) Plaintiff then filed the presently controlling Corrected Second Amended Complaint. (ECF No. 39.)

On August 12, 2015, Judge Quarles entered a Scheduling Order that established, *inter alia*, a September 28, 2015, deadline for joinder of additional parties and amendment of pleadings. (ECF No. 41.) On September 21, 2015, Plaintiff filed his pending Motion to Amend (ECF No. 44), seeking to complement his ADA claims with parallel claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), as amended, 29 U.S.C. § 794(a).[7] Defendant filed a

---

[7] Plaintiff is candid about his motivation for adding what might initially appear to be redundant claims: he "seeks to amend his complaint . . . not because of concerns with the merits of his ADA claims, but because monetary relief under § 504 is not capped at $100,000, as is the case with his ADA claims." (ECF No. 44–3 at 4.)

    Because county boards of education, such as Defendant, are deemed state agencies under Maryland law, they are by default shielded from litigation under principles of sovereign immunity. *See Davis v. Bd. of Educ.*, 112 A.3d 1034, 1047 (Md. Ct. Spec. App. 2015). However, the Maryland legislature has partially waived sovereign immunity. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-518(b) ("A county board of education . . . may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self-insured or a member of a[n insurance] pool . . . above $100,000."). As Judge Quarles noted in his July 28, 2015, Memorandum, the nature and extent of Defendant's insurance coverage is unclear at this stage. (ECF No. 35 at 23 n.24.) Assuming *arguendo* that Defendant is self-insured or a member of an insurance pool or that it maintains private coverage with a policy limit of $100,000, Plaintiff's potential damages under the ADA would be capped at that amount.

    Not so with Plaintiff's potential damages under Section 504. "Unlike the ADA . . . § 504 of the Rehabilitation Act was enacted pursuant to Congress's Spending Clause authority. Accordingly, its protections are triggered by a state entity's acceptance of federal financial assistance, which is deemed to operate as a waiver of the state's Eleventh Amendment sovereign immunity against claims under § 504." *Krpan v. Bd. of Educ.*, Civ. No.

response in opposition (ECF No. 45), and Plaintiff replied (ECF No. 46). The case was transferred to the undersigned on January 22, 2016; Plaintiff's Motion to Amend is ripe for decision.

## II.    *Standard of Review*

Because Plaintiff filed his Motion to Amend within the period prescribed by the Scheduling Order, his Motion is governed by the liberal standard of Rule 15(a)(2) of the Federal Rules of Civil Procedure. Rule 15(a)(2) instructs district courts to "freely give leave" to amend "when justice so requires." *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."). Despite this liberal standard, a court may deny leave to amend if (1) the movant has acted in bad faith; (2) the new pleading would prejudice the nonmovant; or (3) the new pleading would be futile. *Id.* at 426 (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Id.* at 427. The United States Court of Appeals for the Fourth Circuit has cautioned district courts to be wary of prejudice where a "proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party" and where such amendment is offered "shortly before or during trial." *Johnson*, 785 F.2d at 510. Conversely, where an amendment is proposed in the earlier stages of litigation, before significant discovery has commenced, the risk of prejudice is minimal. *Cf. Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) ("The amount of discovery is . . . a relevant consideration in determining whether prejudice would result from the granting of a 15(a) motion.").

---

ELH-12-2789, 2013 WL 4400475, at *8 n.8 (D. Md. Aug. 15, 2013) (citation omitted); *see also Forte v. Bd. of Educ.*, Civ. No. WMN-14-1490, 2014 WL 6893829, at *6 n.4 (D. Md. Dec. 4, 2014) (noting that Section 504 claims are not subject to the statutory $100,000 damage cap).

A futile amendment is one that could not withstand a motion to dismiss pursuant to Rule 12(b)(6). Thus, a futile amendment is one that fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating the plausibility of a claim, the Court construes all facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.    Analysis

Defendant attacks Plaintiff's Motion to Amend on two grounds: first, that the proposed amendments would be prejudicial; second, that the proposed amendments would be futile. The Court addresses each contention in turn.

As for prejudice, Defendant's argument is not persuasive. Apparently conceding that Section 504 claims are not subject to a damage cap under the Code of Maryland,[8] Defendant frets that the proposed Third Amended Complaint would "significantly expand[] the potential liability [it] faces in this suit." (ECF No. 45 at 3.) While Plaintiff's Section 504 claims may increase Defendant's exposure, that is not a valid reason to deny Plaintiff's timely Motion to Amend. Litigants routinely add claims and counterclaims through Rule 15(a)(2) motions; if the mere risk of heightened exposure for the nonmovant were an adequate reason to deny such motions, the policy of liberal amendment underlying the rule would be severely hampered. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §

---

[8] *See supra* note 7.

1487 (3d ed. 2010) ("[P]laintiff typically will not be precluded from . . . adding a claim to an otherwise proper complaint simply because that amendment may increase defendant's potential liability.").

Defendant also objects to the timing of Plaintiff's Motion to Amend, observing that nearly a year elapsed between the filing of his initial Complaint and the filing of his Motion. (ECF No. 45 at 3.)[9] But as Plaintiff observes, as of September 21, 2015 (the date on which he filed his Motion), the parties had only recently exchanged written discovery requests, and no depositions had been taken or even scheduled. (ECF No. 44–3 at 2.) Moreover, the parties subsequently filed joint motions to modify certain dates in the Scheduling Order; consequently, the discovery deadline has been extended to April 29, 2016, with requests for admission due May 6, 2016, and dispositive motions due June 3, 2016. (ECF No. 50.) These extensions should afford Defendant plenty of time to account for Plaintiff's proposed Section 504 claims, particularly given that such claims arise from the same set of facts as his ADA claims.[10]

While the Court has little difficulty rejecting Defendant's strained theory of prejudice, Defendant's futility theory is somewhat more complicated. Defendant contends that (1) in order to recover under Section 504, a plaintiff must demonstrate that he was subject to discrimination

---

[9] Defendant apparently believes that delay, in and of itself, may justify denial of a Rule 15(a)(2) motion, even where such motion is filed within the period prescribed by the scheduling order. But as the Fourth Circuit has recognized, "[d]elay alone . . . without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

[10] Defendant further contends that Plaintiff's delay in adding his Section 504 claims prejudiced Defendant's "ability to rationally assess its exposure to damages." (ECF No. 45 at 3.) In support of this contention, Defendant cites *Equal Rights Center v. Archstone Smith Trust*, 603 F. Supp. 2d 814 (D. Md. 2009), *aff'd sub nom. Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597 (4th Cir. 2010). But in *Equal Rights Center*, the case had been pending for more than three years when the cross-claimant moved to amend, and the amended cross-claim—which shifted from a theory of indemnity to one of contribution—would have required the cross-defendant to undertake substantial additional discovery at the "eleventh hour." The court also noted that the cross-defendant's "settlement posture would of necessity have been quite different three years [earlier] . . . had it known that it was not facing [liability for indemnity] but something considerably below that amount." *Id.* at 819. In this case, by contrast, discovery had only recently commenced when Plaintiff filed his Motion to Amend, and it is not clear that Defendant will be required to undertake *any* additional discovery given the factual congruity between Plaintiff's ADA and Section 504 claims.

*solely* because of his disability; (2) Plaintiff here has inadequately pleaded the Section 504 causation standard; and (3) Plaintiff's proposed Section 504 claims are therefore "fatally flawed." (ECF No. 45 at 6.)

Defendant's understanding of Section 504 causation is correct. While employment discrimination claims brought under Section 504 are generally evaluated pursuant to the same framework as those brought under Title I of the ADA, *see Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413 (4th Cir. 2015),[11] the two statutes impose different causation requirements. The ADA forbids covered employers from discriminating against otherwise qualified individuals "on the basis of disability." 42 U.S.C. § 12112(a). Section 504, by comparison, provides that "[n]o otherwise qualified individual with a disability . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). It is settled law, at least in this Circuit, that the use of "solely" in Section 504 elevates the standard for recovery under that statute. *Compare Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 600 (D. Md. 2013) ("A[n ADA] plaintiff alleging wrongful discharge on the basis of disability must prove that his disability was [a] motivating factor for his termination."), *with Herzog v. Loyola Coll. in Md., Inc.*, Civ. No. RDB-07-02416, 2008 WL 2622840, at *5 (D. Md. May 1, 2008) ("Plaintiff acknowledges in his Complaint . . . that his disability was only one aspect of the 'array of criteria' that led to his dismissal. Having failed to allege that Defendant based its decision solely on Plaintiff's disability, Plaintiff's Complaint fails to state a [Section 504] claim upon which relief can be granted."); *see also Madock v. McHugh*,

---

[11] Oddly, however, Defendant repeatedly refers in its brief to Title II of the ADA. None of Plaintiff's ADA claims arise under Title II; in fact, the Fourth Circuit has held that "Title II unambiguously does not provide a vehicle for public employment discrimination claims." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 421 (4th Cir. 2015). Such claims are instead cognizable under Title I. *Id.* at 413-14.

Civ. No. ELH-10-02706, 2011 WL 3654460, at *13 n.23 (D. Md. Aug. 18, 2011) ("[T]he ADA's standard for causation is more lenient than that of § 504, in that the 'solely by reason of' limitation does not apply." (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999))), *aff'd*, 469 F. App'x 200 (4th Cir. 2012) (per curiam).[12]

But while Section 504 does impose a heightened standard for *causation*, it does not impose a heightened standard for *pleading*. Rather, a Section 504 litigant—like any other federal litigant—must present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If, after accepting all well-pleaded allegations as true, *Ibarra*, 120 F.3d at 474, it appears that the plaintiff has nudged his claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the claim should not be dismissed.

In his proposed Third Amended Complaint (and, indeed, in prior versions of the Complaint), Plaintiff has alleged, *inter alia*, that (1) he was terminated "because he was temporarily unable to work due to a disability-related occupational injury"; (2) during his brief tenure, he performed his duties satisfactorily and was never disciplined for poor performance or misconduct; and (3) Defendant initially informed him that he had satisfactorily completed his probationary period but then extended that period "because of absences caused by his disability-related occupational injury." (ECF No. 44–1 ¶¶ 3, 6, 11, 18.) These allegations, coupled with details about Plaintiff's medical appointments and doctors' notes, provide a sufficient factual foundation from which the Court may plausibly infer that Plaintiff was terminated because of his disability.[13] Whether Plaintiff can adduce sufficient evidence to *prove* that theory is, of course,

---

[12] The Court notes, however, that a circuit split has formed in recent years on the question of ADA causation, and while the Fourth Circuit has yet to revisit the "motivating factor" standard that it announced in *Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999), other courts have rejected that standard in favor of but-for causation. *See Blind Indus. & Servs. of Md. v. Route 40 Paintball Park*, Civ. No. WMN-11-3562, 2012 WL 6087489, at *3 n.2 (D. Md. Dec. 5, 2012).

[13] Defendant draws attention to Plaintiff's allegation that HR told him he had "failed 'to demonstrate the ability to be a dependable asset.'" (ECF No. 45 at 6.) But reading that statement in its context (it appears just two paragraphs

an open question—but this is the pleading stage, and Plaintiff is entitled to the benefit of every doubt.[14]

A more interesting question—but one Defendant does not discuss in its brief—is whether Plaintiff created a problem for himself by alleging, in what is now Count XI, that he was "discharged . . . solely because he filed a claim for worker's compensation."[15] One might argue that discharge due to the filing of such a claim differs from discharge due to the claimant's underlying disability. That said, one might also argue that a worker's compensation claim is intrinsically and inseparably linked to the underlying disability, such that firing an employee because he made such a claim is tantamount to firing the employee because of his disability. In any event, the Court need not press the issue at this stage. Under Rule 8(d) of the Federal Rules of Civil Procedure, a party "may set out 2 or more statements of a claim . . . alternatively or hypothetically," and a party may "state as many separate claims . . . as it has, regardless of consistency." *See Pearson v. FirstEnergy Corp. Pension Plan*, 76 F. Supp. 3d 669, 675 (N.D. Ohio 2014) ("Of course, the fact that . . . alternatively pled claims are mutually exclusive is of no consequence at the pleading stage."); *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.

---

after Plaintiff's allegation about his extended probation), it is obvious that, from Plaintiff's vantage point, he was fired because of his medical condition and the impact that condition had on his availability for work.

[14] Defendant cites *Lewin v. Medical College of Hampton Roads*, 910 F. Supp. 1161 (E.D. Va. 1996), *aff'd*, 131 F.3d 135 (4th Cir. 1997) (unpublished table decision), for the proposition that "[c]ourts do not lightly gloss over § 504's requirement that disability be the 'sole' reason for the alleged discrimination." (ECF No. 45 at 5.) But *Lewin* actually illustrates the weakness of Defendant's position. In that case, the district court dismissed the plaintiff's Section 504 claim where the plaintiff admitted, in his complaint, that he was dismissed from the defendant college "ostensibly based on its opinion that plaintiff had not demonstrated 'an acceptable level of academic and clinical achievement, as well as a style and standard for professional judgment and behavior that is consistent with the responsibilities of the medical profession.'" *Id.* at 1171. The plaintiff added that "more than one clinician . . . negatively evaluated [him] in various aspects of his base of knowledge and clinical participation." *Id.* at 1171-72. In light of such allegations, the *Lewin* court could not plausibly infer that the plaintiff was dismissed solely because of his disability. In this case, by contrast, Plaintiff's factual allegations are consistent with his theory that he was "fired for one reason and one reason only, *i.e.*, [Defendant's] intolerance of his medically-forced absences from the workplace." (ECF No. 46 at 4.)

[15] Under the Maryland Workers' Compensation Act, an employer "may not discharge a covered employee from employment *solely* because the covered employee files a claim for compensation." Md. Code Ann., Lab. & Empl. § 9-1105(a) (emphasis added).

Supp. 2d 660, 666 (D. Md. 2009) ("Rule 8[d] . . . permits a party to plead multiple, and when necessary, inconsistent claims."); *see also Gist v. TVA Bd. of Dirs.*, No. 2:08-cv-227, 2010 WL 2465484, at *4 n.5 (E.D. Tenn. June 14, 2010) (opining that the "mere existence" of a Title VII claim does not constitute an "admission that forecloses the potential success of [a] Rehabilitation Act claim"); *T.M. ex rel. Benson v. S.F. Unified Sch. Dist.*, No. C 09-01463 CW, 2009 WL 2779341, at *3 n.2 (N.D. Cal. Sept. 1, 2009) (recognizing that Section 504 plaintiff may "attempt to plead in the alternative as to the bases of . . . alleged discrimination").

Because Plaintiff has pleaded sufficient factual content from which the Court can plausibly infer that he was fired solely because of his disability—and because Plaintiff's timely amendment inflicts no significant prejudice on Defendant—the Court will GRANT Plaintiff's Motion to Amend and allow him to litigate his Section 504 claims.[16]

**ORDER**

For the foregoing reasons, it is ORDERED:

1. Plaintiff's Motion to Amend (ECF No. 44) is GRANTED;

2. The Clerk is DIRECTED to redocket ECF No. 44–1 as a separate entry, titled "THIRD AMENDED COMPLAINT," on the Court's CM/ECF electronic docketing system; and

3. Defendant shall answer Plaintiff's Third Amended Complaint on or before Monday, February 22, 2016.

DATED this 5th day of February, 2016.

BY THE COURT:

/s/
James K. Bredar
United States District Judge

---

[16] In so doing, the Court cautions Plaintiff that the window for timely amendment has now closed, and any further modifications to the Complaint would be subject to the more onerous "good cause" standard of Rule 16(b)(4).